49616. FULTON COUNTY v. CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS.

CLARK, Judge.

"This is the right place!" Those words were used by Brigham Young on July 24, 1847, to designate the termination of the hegira of his co-religionists when he selected the location which later became Salt Lake City. Since the Mormon Church is the appellee, that definitive phrase is apropos to the instant case. "This is the right place" in which we can definitively determine if the bar of five years inaction on pending law suits applies to all litigation. This includes consideration of land condemnation actions, the subject-matter of the instant appeal.

1. The statute with which we deal was first enacted in 1953 and placed in the Annotated Code as § 3-512 (Ga. L. 1953, Nov. Sess., pp. 342, 343). At that time the

pertinent portion provided that ". . . any suit filed in any of the courts of this State in which no written order is taken for a period of five years the same shall automatically stand dismissed with costs to be taxed against the party plaintiff." After the Supreme Court ruled in *State Highway Dept. v. Noble,* 220 Ga. 410 (139 SE2d 318) that this five-year rule was not applicable to an appeal pending in the superior court from an assessors' award in a condemnation proceeding, the statute was amended by Ga. L. 1967, pp. 557, 558. In doing so the legislature struck the first section of the 1953 law and in lieu thereof enacted as Section 1 that: "Any suit, *action, or other proceeding* filed in any of the courts of this state, in which no written order is taken for a period of five (5) years, shall automatically stand dismissed with costs to be taxed against the party plaintiff. For the purposes of this Act, an order of continuance will be deemed an order and *the word 'proceedings' shall be held to include, but not be limited to, an appeal from an award of assessors or special master in a condemnation proceeding.*" Code Ann. § 3-512. (Emphasis supplied.)

We have italicized those words which were added to what had been contained in Section 1 of the previous statute in order to illustrate the intention of the General Assembly. These italicized words clearly show the lawmakers had in mind the accomplishment of two objectives. The first was to make the five-year nonaction bar binding upon all court proceedings and not limited to suits. The second was specifically to include condemnations so as to overrule the *Noble* case. Our view is fortified upon reading the second and third sections of this 1967 statute.

Because the language used by the General Assembly in its 1967 enactment plainly covers condemnation cases we should not go contrary thereto unless required to do so by controlling legal principles. As appellant argues the 1967 law is a nullity we examine each of the contentions:

(A) One of these contentions is that the Civil Practice Act repealed by implication the 1967 five-year law. Their argument is that the Civil Practice Act accomplished this in that it was a comprehensive restructuring of the entire subject matter of practice.

They then point directly to the wording of § 81A-141 (e) which contains the limiting language of "any suit" as contrasted with the broader phrases of the 1967 verbiage of "any suit, action or other proceeding." As long ago as 1854, Justice Starnes[1] wrote in *Erwin v. Moore,* 15 Ga. 361, 365, that "The law 'does not favor a repeal by implication.' " "Repeals by implication are not favored by law, and a subsequent statute repeals prior legislative acts by implication only when they are clearly and indubitably contradictory, when they are in irreconcilable conflict with each other, and when they cannot reasonably stand together. [Cits.]" *Moore v. Baldwin County,* 209 Ga. 541, 545 (74 SE2d 449). In compliance with this directive we hold that in the case sub judice the 1967 five-year statute was not repealed by implication. Both statutes use the words "any suit." The statute under attack expands that category by adding the general areas of any "action or other proceeding." It also goes further specifically to make clear its application to land condemnation proceedings. Thus § 81A-141 (e) is neither in conflict with nor contradictory to the 1967 enactment and they reasonably can stand together by recognizing that the 1967 enactment expands the coverage of the five-year bar.

(B) Appellant relies upon the cases of *State Highway Dept. v. Noble,* 220 Ga. 410, supra, and *State Highway Dept. v. Union Oil Co.,* 129 Ga. App. 596 (200 SE2d 301). Since the 1967 legislative declaration was obviously aimed at overruling the *Noble* case, we need not consider it as controlling.

The *Union Oil* case presents a different problem as it was decided after the 1967 statute. This court there concluded we were bound to follow the *Noble* case "absent some clear legislative action to the contrary, and we find

---

[1] Ebenezer Starnes (1810-1867) was one of the two Augustans who served on the Supreme Court. The other was Joseph R. Lamar (1857-1916) who was Associate Justice from 1903 to 1905 and after returning to practice was later appointed to the United States Supreme Court, his years there being from 1911 to 1916.

none." P. 598. In the light of further consideration we now find we must overrule that conclusion. The fallacy of our previous position is lucidly shown by counsel representing the church through a chronological chart and reasoning which we adopt:

| | |
|---|---|
| March 16, 1966 | CPA first approved |
| February 28, 1967 | Act postponing CPA effective date approved |
| (March 1, 1967) | (Original effective date of CPA) |
| March 30, 1967 | Act amending CPA approved |
| April 14, 1967 | Amendment to 1953 Act approved |
| September 1, 1967 | Effective date of CPA, as amended |

A review of this chronology makes it clear that the legislature did not intend to repeal the 1953 Act, as amended *in 1967,* by the enactment of the Civil Practice Act. Indeed, the chronology makes it clear that the legislature never considered the question of whether it desired to repeal the 1953 Act, *as amended in 1967,* by its enactment of the Civil Practice Act. The 1967 amendment to the five-year dismissal rule was not enacted and approved until after the legislature had completed its consideration of the Civil Practice Act and the 1967 amendments thereto had been approved. As a result, the legislature could not have intended to repeal by implication or otherwise the 1953 Act and its *1967 amendment* when it enacted the Civil Practice Act. In contrast, to adopt appellant's argument would mean that the 1967 amendment of the 1953 Act was effective *from only April 14, 1967 until September 1, 1967.* Under appellant's interpretation, the legislature, subsequent to the last day it gave any consideration to the Civil Practice Act (a date no later than March 30, 1967), would have engaged in a meaningless and futile exercise when it amended the 1953 Act. There would not be any reason to amend the 1953 Act to apply to condemnation proceedings, yet have the amendment effective for only four and one-half months. Georgia courts have traditionally and uniformly held that it is always presumed that the legislature in enacting a statute was not performing a meaningless or futile act. *City of Jesup v. Bennett,* 226 Ga. 606 (176 SE2d 81); *King v. State Farm*

*Mut. Auto. Ins. Co.,* 117 Ga. App. 192 (160 SE2d 230). The only legally logical construction that gives effect to the true legislative intent is to hold the 1953 Act as amended in 1967 was not repealed by the Civil Practice Act.

(C) Another argument by appellant is that the 1967 law was repealed through the general repealer section contained in Section 136 of the Civil Practice Act when originally enacted. This is the usual general repealer which provides that: "All laws and parts of laws in conflict with this Act are hereby repealed." Ga. L. 1966, pp. 609, 691. For this general repealer provision to be here applicable the 1967 statute must be "in conflict" with some provision of the CPA which appellant argues exists in the five-year dismissal provision for want of prosecution stated in CPA § 41 (e) (Ga. L. 1966, p. 654). When the courts are called upon to determine if there is a conflict between statutes they are required to undertake to construe them together and seek to give full effect to both laws as representing all of the legislative intention. *Undercofler v. Colonial Pipe Line Co.,* 114 Ga. App. 739 (152 SE2d 768). As pointed out in the prior division of this opinion in which we dealt with the contention as to repeal by implication the inescapable fact is that the 1967 Act is not in conflict with the dismissal provision of the Civil Practice Act because it is supplementary thereto in making the five-year dismissal rule applicable to all proceedings in all courts.

(D) A further argument made by able advocate for appellant is that the blanket specific repealer section appearing at page 687 of the 1966 Laws in the original enactment of the Civil Practice Act directly terminated the five-year non-action statute. Therein we find that sub-paragraph (c) reads: "Section 3-510 and Section 3-512, which sections relate to dismissal of actions." We are unable to give any credence to this contention because the Georgia Code of 1933 does not contain a § 3-512. That section number is given the 1953 Act by the Harrison Company in the unofficial Georgia Code Annotated. While we know the Annotated Code is the principal working tool of the bench and bar of our state, numerous decisions have held that an attempt to amend or repeal a law by reference to a Georgia Code Annotated section

number is a total nullity. See, e.g., *CTC Finance Corp. v. Holden,* 221 Ga. 809 (147 SE2d 427) and *Griffin v. Thomas,* 120 Ga. App. 362 (170 SE2d 437).

2. Present counsel for Fulton County who was not in this litigation when it was instituted in November 1967 argues that the county's failure to take any order resulted from a situation which his brief describes as "a chaotic transitional period" occurring in April 1971 because of a change in Fulton County Superior Court procedures. In appellant's fourth enumeration it is contended the trial court erred in connection with local court Rules 14 and 15 which are quoted in the record. This enumeration has no merit as local court rules must yield to the provisions of the general law. *Pate v. Scott Real Estate Co.,* 132 Ga. App. 49, 51 (1) (207 SE2d 567). In fact, the quoted local rule 14 expressly states that Fulton County Superior Court rules and orders shall not be such "as to conflict with the general laws of this state."

3. In the instant case each litigant had filed individual timely appeals in December 1967 from the Special Master's award. Excepting for an order dated December 22, 1967, authorizing the clerk of the court to pay the church the condemnation funds from the court treasury, there was no written order of any type taken in either appeal until November 16, 1973. On that latter date the church filed its motion to dismiss Fulton County's appeal on the ground that the county had "failed to prosecute the appeal with the requisite diligence by allowing the action to sit dormant" for more than five years. That motion included a paragraph that if granted as to Fulton County then the court should also dismiss the independent appeal of the church under the applicable five-year statute. Fulton County objected as to both dismissals and stated it did not consent to dismissal of the church's appeal. This objection was based on the ruling in *State Highway Dept. v. Blalock,* 98 Ga. App. 630 (106 SE2d 552) that a condemnee cannot dismiss its appeal without the consent of the condemnor, which case dealt with a voluntary withdrawal. Thereupon, the church amended by striking that portion of its motion and suggested the court act *ex mero motu.*

The court thereafter ruled that both appeals should

"stand dismissed as of December 23, 1972, five years after the entry of the last previous written order." This ruling correctly recognized that failure to take a written order for a period of five years meant in the terms of the 1967 statute that the case "shall automatically stand dismissed." As this court pointed out in its recent decision of *Dollar v. Webb,* 132 Ga. App. 811 (209 SE2d 253): "[W]hen a case stood automatically dismissed this meant that it was completely lifeless for all purposes from the date of the dismissal, so that if not removed a motion to strike it from the docket would lie" and "that the date on which the automatic dismissal occurred rather than the date on which it was physically stricken from the docket determined the time of death."

4. The dominant *leit motif* for the five year automatic dismissal for non-action was declared in *Swint v. Smith,* 219 Ga. 532, 534 (3) (134 SE2d 595). There our Supreme Court said the statute "has at least the dual purpose of preventing court records from becoming cluttered by unresolved and inactive litigation and protecting litigants from dilatory counsel. . ." The opinion further recognized that "it is in the public interest to remove from court records litigation which has been inactive for a period of five years." Enforcement of this five-year inaction bar is helpful to judicial administration. Therefore, it should be enforced as to all litigation in conformance with the declared legislative intent shown in their use of the all-inclusive words making it apply to "any suit, action or other proceeding."

*Judgment affirmed. Bell, C. J., Deen, P. J., Quillian, Stolz, Webb and Marshall, JJ., concur. Pannell, P. J., concurs specially. Evans, J., concurs in the judgment.*

Argued September 9, 1974 — Decided January 17, 1975 — Rehearing denied February 5, 1975 —

*John R. Strother, Jr.,* for appellant.
*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Matthew H. Patton, Robert W. Coleman,* for appellee.

Pannell, Presiding Judge, concurring specially.

I concur rather fully in the majority opinion, except for slight differences in arriving at the ultimate result.

I concur in the overruling of *State Highway Dept. v. Union Oil Co.,* 129 Ga. App. 596 (200 SE2d 301). We fell into two errors in that case, (1) in holding that an Act of the Legislature repealing a Section of Harrison Company's "Georgia Code Annotated" was a repeal of an Act of the legislature so "codified" by Harrison Company, and (2) in holding a valid Act of the legislature of a given year (1966) could repeal an Act of the legislature of a subsequent year (1967) on the erroneous theory that because the first Act was not "effective" until after the second Act became law, the prior Act could repeal the subsequent one. We failed to properly evaluate the distinction between "the effective" date of the operation of the Act and the date it became a law. It is clear to me now that such a futuristic concept of an older Act repealing a younger one is entirely erroneous. For this reason, I concur in the ruling of the majority that Section 41 (e) of the Civil Practice Act (1966) did not repeal the Act of 1967, even though the Civil Practice Act became effective in operation after the 1967 Act became effective both as a law and in operation, and also, for these reasons, I might add neither an express nor an implied repeal of the Act of 1967 took place, and for this reason alone it being sufficient and controlling.

That there is a clear difference and distinction between the time an Act of the Legislature becomes law and the time it becomes effective in operation may be demonstrated.

Code § 102-105 provides: "Laws, after promulgation, are obligatory upon all inhabitants of this State, and ignorance of the law excuses no one." This section has been in all of our Codes up to the present time, but what constituted "promulgation" has been the subject of varying conditions in the Codes of 1863 (Sections 3, 4); 1868 (Section 3); 1873 (Section 3) and 1882 (Section 3). These sections did not appear in the Codes of 1895, 1910 and 1933. As to rulings in this area prior to the Codes and during the Codes above recited, see *Heard v. Heard,* 8 Ga. 380 (4); *Boston & Gunby v. Cummins,* 16 Ga. 102; *Green v. Hall,* 36 Ga. 538; *Grinad & Benton v. State,* 34 Ga. 270

(2). Since the Act of 1876 (Ga. L. 1876, p. 28) it has been the law of Georgia that a law is duly promulgated, after passage by the legislature, by the approval of the governor (*Epstin v. Levenson & Co.,* 79 Ga. 718 (2), 4 SE 328), and becomes effective in operation on the date of such approval, unless the Act otherwise provides.

Though not applicable, the automatic but effective operational date was changed by Ga. L. 1968, pp. 1364, 1365, as amended by Ga. L. 1969, p. 7 (Code Ann. § 102-111) which made provision for "effective" dates at two different times during the year, depending upon when the Act was passed by the legislature as to Acts becoming law by approval of the governor or becoming law without his approval. It appears, therefore, the distinction between the two dates, the time an Act becomes law and the time it becomes effective in operation are two different things. As a matter of fact, the CPA was many times amended while it was effective in operation. Under these circumstances, it would follow that the Act of 1967 could legally act as a modification or repeal by implication of sub-paragraph (e) of Section 41 of the Civil Practice Act if the other facts necessary to create such implied repeal were present. The Act of 1967 covers the entire subject matter of Paragraph (e) of Section 41 of the Civil Practice Act and makes additions thereto. In my opinion, this itself is amply sufficient to hold that the Act of 1967 impliedly repealed Paragraph (e) of Section 41 of the Civil Practice Act. "While repeals by implication are not favored and the intention to repeal must be plain and unmistakable, yet a repeal by implication will result where a statute is manifestly intended to cover the subject-matter of a former statute and to act as a substitute for it, notwithstanding the express provisions of the Acts are not repugnant. *Johnson v. Southern Mutual Building & Loan Assn.,* 97 Ga. 622 (25 SE 358); *Jones v. Stokes,* 145 Ga. 745 (89 SE 778); *Brackett v. Arp,* 156 Ga. 160 (118 SE 651); *Hardeman v. Ellis,* 162 Ga. 664 (6), 691 (135 SE 195); *Friedman v. Mizell,* 164 Ga. 1 (137 SE 400); *Thornton v. State,* 5 Ga. App. 397 (3) (63 SE 301); *Hardy v. State,* 25 Ga. App. 287 (103 SE 267); *Peacock v. Larsen,* 180 Ga. 444 (178 SE 922)." *City of Atlanta v. Goodman,* 183 Ga. 834, 835 (189 SE 829).

856

See also, *Leonard v. State,* 204 Ga. 465 (50 SE2d 212); *Mosley v. Lanier,* 213 Ga. 373 (99 SE2d 118).